Curran, Dennis J., J.
Background
This contentious matter was tried without a jury over five days on October 13, 20, 21,24, 25 and settled on the sixth day on October 29, 2011.[1] Mid-trial, the parties executed a notarized Settlement Agreement and Mutual Release which, after a hearing, was approved in open Court.
The Settlement Agreement required that the defendants transfer 251 Webster Street, Newton, Massachusetts, unencumbered, to Robert Ryan and pay him an additional $200,000. The defendants were permitted up to six months to sell 58 Brattle Street in Arlington, Massachusetts to enable them to come up with monies sufficient to pay off any mortgage on the Webster Street property as well as to provide cash sufficient to pay their commitment of $200,000 to Mr. Ryan.
The Morans did list the property with the Multiple Listing Service for a sales price of $599,000, but after six months of receiving not a single offer, failed to reduce the purchase price in any way to facilitate its sale. The plaintiff Ryan claims that their conduct can only be explained by the fact that during this period, they continued to enjoy a stream of rental income from both multiple unit Newton and Arlington properties. Urns, after giving their word, they continued to enrich themselves, to the detriment of Mr. Ryan, a developmentally-disabled individual.
The Agreement called for the closing to take place in six months on 251 Webster Street, Newton; this was a term negotiated at arms’ length, and indeed, agreed upon mid-trial, between counsel and the parties. The *197 April 21, 2012 closing date came and passed, with no closing in sight. Instead, Mr. Ryan’s counsel, suspecting that the Morans were dragging their feet, felt compelled to file a motion to enforce the settlement agreement (paper no. 52), and submitted a proposed Order requesting relief. At this point, the Morans had failed to comply with a Settlement Agreement, which had been negotiated in their behalf by their counsel, in the middle of the trial, and approved in open Court.
The Court held hearings on May 8, 2012 and June 7, 2012 on the motion to enforce the settlement agreement, in an effort to encourage the defendants to honor their settlement obligations. These hearings eventually culminated in two Orders issued by the court. (See papers numbered 54 and 55.) The former set a firm schedule for the defendants to transfer the Newton property to Mr. Ryan, and also scheduled a compliance hearing two months thereafter, that is, on August 7, 2012; the latter ordered the sale of the Arlington property.
The parties offered varying accounts of the transactions, with the plaintiff claiming that the defendants’ non-compliance ought to trigger the negotiated penalty clause spelled out in the Settlement Agreement, and the defendants denying that any unwarranted delay occurred, but concede that they are liable for a penalty. (See defendant’s Response, paper no. 57.)
DISCUSSION
This matter arose out of the defendant Paula A. Moran (the plaintiffs cousin) and her husband’s alleged deceit in defrauding her cousin, Robert Ryan, a former resident of the Fernald School, of his rightful ownership in his family home, and defalcating substantial amounts of cash from him.
After several days of disturbing and credible evidence of such deceit, the parties settled the case. The details of that Agreement were negotiated at arms’ length over several days between counsel. It called for the defendants to undertake several tasks: transfer his home back to Mr. Ryan and pay him an additional $200,000. That Agreement was obviously a contract. Given the pattern of deceit and duplicity alleged against the defendants, well supported by the trial testimony, the plaintiffs insisted on a non-compliance provision which triggered an interest factor at the statutory rate. That rate is, and has been for about three decades, twelve percent simple interest. (See G.L.c. 235, section 8.) The defendants now claim that the term “statutory interest” can only be triggered by their failure to pay that portion of the settlement that called for a money judgment, that is, their failure to pay the $200,000 they promised Mr. Ryan.
The defendants are off-the-mark. The Agreement called for certain events to occur on a mutually-determined schedule. Once the litigational heat was off, the defendants returned to their pre-suit conduct, and did the bare minimum to sell the Arlington multiple unit dwelling to enable them to return Mr. Ryan’s home to him, unencumbered by the significant liens they had allowed to be imposed on that property. The reason for the defendants’ conduct is obvious: they wanted to continue to enjoy substantial rental incomes each month from both properties.
This case was about defrauding a mentally-challenged individual. From its sordid facts, plaintiffs counsel’s distrust of the defendants was palpable when the parties negotiated the Settlement Agreement. The term “statutory interest” was shorthand for referring to the statutory rate of interest, and not simply to be limited to a judgment on which such a rate might apply. The facts of the case abundantly support such an interpretation. The plaintiffs counsel was justifiably concerned about the defendants’ full compliance with the terms of the parties’ contract, not just the money portion, and insisted upon such a term to keep the defendants honest.
The Agreement called for the Morans (husband and wife) to transfer good, clear, and marketable title, free and clear of all mortgages in 251 Webster Street, Newton to Robert Ryan and pay him $200,000. It gave the Morans up to six months to sell property they owned in Arlington, from which they expected to have equity sufficient to satisfy the encumbrances they had placed on the Newton property and pay Mr. Ryan. The satisfaction of both terms within a specified time limit of six months was supposed to result in a stipulation of dismissal of this action.
Six months came and passed; the defendants refused to reduce their asking price and hence, failed to fulfill their part of the contract. That failure triggered section 9a of the Settlement Agreement:
Failure to Comply in Toto. In the event that after six months from this date, specifically by April 25, 2012, the Defendants have failed to effectuate the transfer of the 251 Webster Street, Newton property to the Plaintiff and/or to pay the balance of the settlement, a Judgment shall issue ordering the Defendants to transfer the 251 Webster Street, Newton, property to the plaintiff, subject to all outstanding mortgages; Counsel for the plaintiff shall (subject to objections by Defendants’ counsel for errors) submit a sworn affidavit to the Court of all of the Defendants obligations necessary to satisfy the remainder of the obligation, including the outstanding mortgage balance on the 251 Webster Street, Newton property and all concomitant obligations for that property and a judgment and Execution for said remaining balance shall issue, with statutory interest on the balance only to be calculated back to the date of this agreement.
(Emphasis added.)
The contract was breached and paragraph 9a of the Settlement Agreement was triggered thereby. The con *198 sequences of such breach should be obvious: the defendants are responsible for all costs of collection, including attorneys fees.
Given the defendants’ breach, the Court ordered the parties to provide an accounting of the real estate sale and determine the resulting amount of interest and attorneys fees. Counsel did so; a hearing was held; and time was extended for the filing of supplemental pleadings. (See paper no. 58.)
The defendants concede that they owe additional monies for their breach, but dispute the amount. Their claim that no interest is presently due because they failed to deliver the property as agreed rests on Settlement Agreement language that declared the potential deed “restorative in nature and result(ed) from Ryan’s claim for rescission.” It matters not what the defendant chose to call the deal; the agreement, as a whole, was a contract, and as such, its terms were breached. This was not a “non-monetary” judgment; it was a contract term.
We address other issues properly raised by the defendants.
The defendants claim the plaintiff miscalculated the interest factor in line 9; it should be $9.12 per diem, not $34.16, as suggested by the plaintiff.[2] The defendants are correct. The result is a new line 9 figure of $164.15, not $614.88.
Moreover, although the plaintiff is entitled to attorneys fees, the following time allotments and amounts are disallowed because they do not represent collection costs:
DATE TIME AMOUNT
April 27, 2012 1.5 $202.50
April 30, 2012 1.5 202.50
May 7, 2012 .6 153.
May 15, 2012 .3 76.50
May 30, 2012 .6 153.
June 20, 2012 .7 178.50
June 21, 2012 1.8 459.
July 20, 2012 2.3 586.
TOTAL EXCLUDED 9.3 hours $2,011
TIME:
The time charges on April 27, 2012 and April 30, 2012 (both of 1.5 hours, for a total of 3.0 hours) are disallowed since they seek travel time at an attorney’s rate to the court to file a pleading (a ministerial function)[3] Similarly, the charge of 2.3 hours on July 20, 2012 is also denied,[4] for an additional disallowed time of 9.3 hours at $255 per hour, that is, a total of $2,011.
In summary, line 9 is adjusted to $164.15, and line 10, to $7,794.40. With these reductions, the Court adopts the plaintiffs Accounting.
ORDER AND JUDGMENT
For these reasons, judgment shall issue forthwith in the sum of $111,271.20 due from the defendants’ breach of the Settlement Agreement (i.e., the amount sought of $114,333.07, minus the disallowed interest of $450.77 as detailed above on line 9, and further, minus $2,011 in attorneys fees (line 10).

See Calendar Events in docket sheets for Middlesex Superior Court Docket No. 2010-4650.

In so ruling, the court also adopts the reasons in note 2 of the defendants’ Response to Plaintiffs Accounting.

Since the court is unable to parse out what portion of the 1.5 hours was spent on “Letter to Atty. Brodie, certificate of service . . . ,” the entire sum is disallowed.

Again, the court cannot determine how much of the time “to go to the [the] bank to deposit [the] proceeds,” among other tasks were appropriate. While it may have been preferable to the attorney that a substantial check should be deposited by him in person, such action did not constitute a legal service.